**UNITED STATES of America,**
**Plaintiff,**

v.

**Joseph P. MINERD, Defendant.**

**No. CR. 99–215.**

United States District Court,
W.D. Pennsylvania.

Nov. 19, 2001.

**430**

Shaun E. Sweeney, U.S. Attorney's Office, Pittsburgh, PA, for Plaintiff.

Shelley Stark, Federal Public Defender's Office, Pittsburgh, PA, Jay T. McCamic, McCamic & McCamic, Wheeling, WV, Richard Kammen, Gilroy, Kamen & Hill, Indianapolis, IN, for Defendant.

## OPINION

COHILL, Senior District Judge.

Defendant Joseph P. Minerd is charged with maliciously damaging and destroying, by means of fire and an explosive, a building which was used in interstate commerce and in an activity affecting interstate commerce, which conduct resulted in the deaths of Deana Mitts and Kayla Mitts, in violation of 18 U.S.C. § 844(i). The government has served notice that it intends to seek the death penalty if the defendant is convicted, under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*

The defendant has filed the following pretrial motions challenging the government's decision to seek the death penalty in this case: (1) Motion to Dismiss Notice of Intent to Seek the Death Penalty (Doc. 67); (2) Motion to Dismiss the Prosecution's Request to Kill Joseph Minerd for the Reason that the Prosecution's Notice and the Notice Provision of 18 U.S.C. § 3593 Violate the Fifth Amendment to the United States Constitution (Doc. 72); and (3) Motion to Strike Various Specifications of the Prosecution's Notice of Intent

to Seek the Death Penalty (Doc. 69). Defendant Minerd has also filed a Motion for a Bill of Particulars Regarding Aggravating Factors (Doc. 68).

The government has filed a response to each of these motions. We will address them *seriatim.*

## I.

## Motion to Dismiss Notice of Intent to Seek the Death Penalty (Doc. 67)

Defendant Minerd challenges the FDPA as unconstitutional on its face and as applied to his case. He makes a number of arguments to support his motion to dismiss the government's notice of intent to seek the death penalty.

### (a)

Minerd first argues that the statute is unconstitutional because it permits non-statutory aggravating factors to be arbitrarily defined by the government. He contends that this is an unconstitutional delegation of legislative power.

Article 1 § 1 of the United States Constitution provides that "all legislative Powers herein granted shall be vested in a Congress of the United States." Under the "nondelegation doctrine," Congress may not delegate its legislative power to another branch of government. *Touby v. United States,* 500 U.S. 160, 164–65, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991); *United States v. Mistretta,* 488 U.S. 361, 372, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). In *Mistretta,* the Supreme Court upheld the delegation of power to a commission within the federal judiciary to promulgate new federal sentencing guidelines. The Court explained that Congress may seek the assistance of another branch of government, without offending Article I § 1. As long as Congress formulates "an intelligible principle to which the person or

body authorized to exercise the delegated authority is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Mistretta,* 488 U.S. at 372, 109 S.Ct. at 654.

Minerd argues that the authority delegated to the Attorney General in the FDPA fails to meet this "intelligible principle" requirement, but cites no cases for this conclusion. We do not agree.

At the outset, we note that a number of district courts addressing this issue have held that the nondelegation doctrine is not even implicated because there has been no delegation of Congressional authority that has even occurred. *See, e.g., United States v. Bradley,* 880 F.Supp. 271, 284 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 546, 560 (E.D.N.Y.1992). The rationale is that it is the statutory aggravating factors, which Congress has defined in § 3592, which set the minimum requirements for considering the death penalty. Since the non-statutory aggravators objected to here do not serve a narrowing function, and the jury need not find any of them in order to recommend death, the government is "engaging in advocacy, not legislation" when it enumerates the non-statutory aggravators for a particular case. *Bradley,* 880 F.Supp. at 284 (quoting *Pitera,* 795 F.Supp. at 560).

■ We join those courts which have reached the opposite conclusion. These courts have held that by enacting this provision of the statute Congress has delegated some authority, and that such delegation is not unconstitutional. *United States v. Jones,* 132 F.3d 232, 239 (5th Cir.1998); *United States v. Davis,* 904 F.Supp. 554, 559 (E.D.La.1995); *United States v. Pretlow,* 779 F.Supp. 758, 765–67 (D.N.J.1991). Under the FDPA, the jury must ultimately decide whether the statutory and non-statutory factors outweigh the mitigating factors. Thus the statutory aggravators "ul-

timately become indistinguishable from nonstatutory factors in the final weighing by the jury." *Davis,* 904 F.Supp. at 559. Therefore, permitting the government to designate these additional factors does affect the sentencing and is a delegation of legislative authority. *Id.*

■ Delegation, however, is not unconstitutional, if the statute includes an intelligible principle to guide the prosecution's authority to frame the non-statutory aggravators. We agree with the Fifth Circuit's reasoning in *Jones,* which considered this precise issue and found that "[t]he authority to define non-statutory aggravating factors falls squarely within the Executive's broad prosecutorial discretion. . . ." *Jones,* 132 F.3d at 239. That court explained that § 3593 imposes sufficient limits on this delegated authority, by requiring prior notice of the aggravating factors the government will seek to prove, placing due process constraints on the aggravating factors that may be submitted, providing that the district court will function as a gatekeeper to limit the admission of useless or prejudicial information, and requiring that the jury find at least one statutory aggravating factor beyond a reasonable doubt before it may consider any non-statutory factors. *Id.* at 240. The *Jones* court concluded that "these limitations provide the prosecution with an 'intelligible principle' so that an unconstitutional delegation does not occur." *Id. Accord, United States v. Frank,* 8 F.Supp.2d 253, 266 (S.D.N.Y.1998).

Other courts have reached the same conclusion in reviewing similar challenges to the death penalty provisions of the Anti Drug Abuse Act of 1988, 21 U.S.C.A. § 848(e) ("ADAA"). *See United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996); *United States v. Tipton,* 90 F.3d 861 (4th Cir.1996).

Accordingly, we find that the FDPA delegates authority to the government by permitting the prosecution to define non-statutory aggravating factors, and that this delegation is not unconstitutional. Therefore we reject the defendant's challenge to the statute on these grounds.

### (b)

Defendant's next argument is that the statute is unconstitutional because it improperly authorizes the weighing of non-statutory aggravating factors, and fails to provide for proportionality review or any meaningful level of appellate review.

Minerd's argument that the statute improperly authorizes the weighing of non-statutory aggravators, is that the statutory aggravating factors, set forth in § 3592, are so vague that they do not meaningfully narrow the class of those eligible for the death penalty. Thus, he contends, a jury decision to impose a sentence of death might impermissibly be based solely upon non-statutory aggravating factors.

In support of his argument, defendant refers us to *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In that case, the United States Supreme Court considered whether to vacate a death sentence because one of three aggravating factors upon which the jury relied in reaching its decision, was later determined to be unconstitutional. The Georgia statute at issue was not a weighing scheme; rather, the jury was permitted to base a decision to impose the death penalty on a single statutory aggravator. Thus, the Supreme Court upheld the sentence, since the other two factors remained valid. Minerd reads *Zant* to stand for the proposition that the federal death penalty scheme is suspect, because a jury weighing both statutory and non-statutory aggravating factors, on the one hand, and mitigating factors on the other, could impose the death penalty without basing the decision

on a statutory factor. We find *Zant* unpersuasive on this point. The Supreme Court did not address a weighing statute in that decision, and did not express an opinion on such a scheme. There is nothing in *Zant* that requires us to find the federal death penalty statute unconstitutional.

We also reject defendant's argument that the FDPA permits a jury to recommend death by relying solely on non-statutory factors. Under the statutory scheme, if the government intends to seek the death penalty, it must provide notice of such intent "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." § 3592(b). During the penalty phase, information may be presented as to any mitigating or aggravating factor. § 3593(c). After the hearing, the jury "shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor for which notice has been provided under section (a) found to exist." § 3593(d). "A finding with respect to any aggravating factor must be unanimous. If no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law." § 2593(d). Under §§ 3592 and 3593, then, the jury in a penalty phase must find at least one of the statutory aggravators beyond a reasonable doubt in order to recommend the death penalty. The statute does not permit the jury to recommend death based only upon non-statutory factors.

 Defendant's assertion that the statutory aggravators are unconstitutional because they are vague and fail to narrow the class of defendants eligible for the death penalty is also without merit. "[T]o survive constitutional scrutiny, a death

penalty statute must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *United States v. Cooper*, 91 F.Supp.2d 90, 95–96 (D.D.C.2000) (quoting *Zant*, 462 U.S. at 876, 103 S.Ct. 2733). The Supreme Court has held that a statutory factor is not unconstitutionally vague unless it fails to furnish principled guidance for the sentencer's choice between death and a lesser penalty. *Maynard v. Cartwright*, 486 U.S. 356, 361–64, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). *See also, Zant*, 462 U.S. at 878, 103 S.Ct. 2733 (statutory aggravators must enable the jury to make an "individualized determination on the basis of the character of the individual and circumstances of the crime"). We hold that the federal death penalty statute satisfies this constitutional requirement, by requiring that at least one aggravating factor be found before the death penalty is imposed. *Accord, Cooper* 91 F.Supp.2d at 95–96.

■ Defendant also takes the position that the statute fails to provide meaningful appellate review and thus is unconstitutional, but he cites no cases to support his argument. We must reject this conclusory assertion. The Constitution certainly requires meaningful appellate review in capital cases. *Parker v. Dugger*, 498 U.S. 308, 321, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). The federal statute provides for appellate review of a death sentence. § 3595(a). The court of appeals must review the entire record, including evidence submitted during trial, the information submitted during the sentencing hearing, and the special findings returned by the jury. § 3595(b). Proportionality review is not constitutionally required in death penalty cases. *Pulley v. Harris*, 465 U.S. 37, 42, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)

("Examination of [*Gregg* and other] cases makes clear that they do not establish proportionality review as a constitutional requirement"). However, the FDPA does not preclude proportionality review should an appellate court conclude that such review is appropriate. *Cooper*, 91 F.Supp.2d at 99; *United States v. McVeigh*, 944 F.Supp. 1478, 1486 (D.Colo.1996); *United States v. Nguyen*, 928 F.Supp. 1525, 1537 (D.Kan.1996); *United States v. Walker*, 910 F.Supp. 837, 850 (N.D.N.Y.1995); *Pitera*, 795 F.Supp. at 559; *Pretlow*, 779 F.Supp. at 768–69. Similarly, there is nothing in the statute that precludes plain error review, should the court of appeals so choose. *Jones v. United States*, 527 U.S. 373, 385, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). It is clear to us that the statutory scheme provides for meaningful appellate review, and we reject defendant's challenge to its constitutionality on this ground.

### (c)

■ Defendant further argues that the statute is unconstitutional because it violates the ban on *ex post facto* laws. Article I, § 9 of the United States Constitution proscribes laws that alter the definition of crimes, increase the punishment for criminal acts, or deprive a defendant of a defense after the underlying offense has been committed. *California Dep't of Corrections v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925). Minerd contends that because the statute permits the government to define non-statutory aggravating circumstances after the crime but before trial, the *ex post facto* provision of the Constitution is violated. However, the jury need not even address the non-statutory aggravators in order to recommend the death penalty. Thus, permitting the government to assert additional non-statu-

tory aggravating factors neither increases the possible punishment nor alters the elements of the underlying offense, and does not trigger *ex post facto* concerns. *Poland v. Arizona*, 476 U.S. 147, 156, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *Walton v. Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (aggravating factors constitute neither separate penalties nor offenses); *Frank*, 8 F.Supp.2d at 267; *Bradley*, 880 F.Supp. at 284; *Pitera*, 795 F.Supp. at 563–64.

In addition, we note that both the statute under which the defendant is charged, 18 U.S.C. § 844(i), and the applicable provisions of the federal death penalty statute, were enacted prior to January 1, 1999, the date of the offense charged. Accordingly, we find that the statute does not offend the *ex post facto* doctrine.

### (d)

■ Minerd next contends that the FDPA is unconstitutional because it improperly limits the consideration of mitigating evidence, by not allowing full consideration of the circumstances of the offense or the offender, and by barring potentially mitigating evidence related to the defendant's race, religion, national origin or sex.

Section 3592(a) sets forth the mitigating factors to be considered in determining whether a sentence of death shall be imposed. Those factors are (1) impaired capacity (significant impairment); (2) duress (unusual and substantial duress); (3) minor participation (relatively minor); (4) equally culpable defendants; (5) no prior criminal record (no significant prior history); (6) disturbance (severe mental or emotional disturbance); (7) victim's consent; and (8) other factors (a catch-all provision allowing for other factors in the defendant's background, record, or character or any other circumstance of the of-

fense that mitigate against imposition of the death sentence).

Essentially, defendant's argument is that the qualifying language included in parentheses above, impermissibly acts to prevent the jury from considering any mitigating circumstances. He further asserts that the catch-all provision does not save the statute's unconstitutionality, and that the jury will discount any mitigating circumstances included under this provision as not " 'deserving' of special mention." Minerd provides no caselaw to support this argument, and we reject it as purely speculative.

■ We also reject defendant's contention that § 3593(f) is unconstitutional as applied to this defendant, because it forbids the jury from considering certain potentially mitigating factors. That section provides, in pertinent part, that the jury must be instructed as follows:

> ... in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be.

18 U.S.C. § 3593(f).

Minerd claims that this requirement conflicts with *Lockett v. Ohio*, which holds that a sentencer cannot be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record, or any circumstances of the offense, that a defendant proffers. 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Section 3593(f) is denominated as a special precaution to ensure against discrimination. We are persuaded by the plain language of the statute that this provision is

included to advise the jury that it cannot base its decision based upon these characteristics. It does not unconstitutionally restrict a defendant's ability to present mitigating evidence. Furthermore, Minerd fails to indicate how this provision of the statute is unconstitutional as applied to his case. Therefore, we reject his challenge to the statute on these grounds.

### (e)

Minerd next argues that the relaxed evidentiary standard in the penalty phase, set forth in § 3593(c), renders any findings unreliable. He suggests that the standard available to the government does not comport with the heightened standards required in all capital cases under federal law.

Section 3593(c) addresses proof of mitigating and aggravating factors, and suspends the rules of evidence at the sentencing hearing. This section provides, in pertinent part:

> At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury....

> The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.

18 U.S.C. § 3593(c).

We agree that heightened reliability is essential to the capital process. As the Supreme Court has emphasized, "the Constitution places special constraints on the procedures used to convict an accused of a capital offense and sentence him to death. The finality of the death penalty requires a greater degree of reliability when it is imposed." *Murray v. Giarratano,* 492 U.S. 1, 8–9, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (internal citations omitted). *See, also, Lowenfield v. Phelps,* 484 U.S. 231, 238–39, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed") (*quoting Lockett,* 438 U.S. at 604, 98 S.Ct. 2954).

■ We disagree, however, with defendant's conclusion that § 3593(c) "contemplates an evidentiary free-for-all at the penalty trial." Doc. 66 at § C (unpaginated). It is "essential ... that the jury have before it all possible relevant information about the individual whose fate it must determine." *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The Supreme Court has long emphasized the importance of the sentencing body having full and complete information about the defendant. In *Williams v. New York,* the Court stated that "modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules

of evidence properly applicable to the trial." 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The Court reaffirmed this principle in *Gregg v. Georgia,* stating that "so long as the evidence introduced and the arguments made at the pre-sentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes a sentencing decision." 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

■ We agree with numerous courts have recognized that a tension exists between the need for heightened reliability in death penalty cases and the need for the jury to have as much information as possible, and have found that § 3593(c) meets constitutional requirements. *See, e.g., United States v. Jones,* 132 F.3d 232, 241–42 (5th Cir.1998), *aff'd,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *United States v. Cooper,* 91 F.Supp.2d 90, 98 (D.D.C.2000); *United States v. Frank,* 8 F.Supp.2d 253 267–71 (S.D.N.Y.1998); *United States v. Nguyen,* 928 F.Supp. 1525, 1546–47 (D.Kan.1996); *United States v. McVeigh,* 944 F.Supp. 1478, 1487 (D.Colo.1996).[1] Accordingly, Minerd's argument that § 3593(c) is unconstitutional will be denied.

### (f)

Defendant next challenges the constitutionality of § 3593(e). Under this provision, once a jury concludes that aggravating factors are present, the statute directs the jury to balance all factors as follows:

> the jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593(e).

■ Minerd argues that the statute violates the Eighth Amendment because it fails to provide guidance to the jury on how to balance the mitigating and aggravating factors.

This argument must fail under the weight of existing precedent. As the government points out, the Constitution does not even require the weighing of aggravating factors in a capital case. *Blystone v. Pennsylvania,* 494 U.S. 299, 306–07, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Upholding the constitutionality of the Pennsylvania death penalty statute, *Blystone* held that "the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by a jury." *Id.* at 306–07, 494 U.S. 299, 110 S.Ct. 1078. *See, also, Zant* 462 U.S. at 875–76, n. 13, 103 S.Ct. 2733 (*citing Jurek,*

---

1. Courts have also considered and rejected similar constitutional challenges in the context of the Anti Drug Abuse Act of 1988 ("ADAA"), 21 U.S.C. § 848(e), which provides for the death penalty for conviction for a drug-related murder. The sentencing provisions are substantially similar to those in the FDPA, although the ADAA affords a capital defendant less protection than the FDPA, since it provides that information should be admitted unless the probative value is "sub-

stantially outweighed" by the danger of unfair prejudice, confusion, or misleading the jury. 21 U.S.C. § 848(j). The standard under the FDPA is "outweighed." *See, e.g., United States v. DesAnges,* 921 F.Supp. 349, 355–56 (W.D.Va.1996); *United States v. Walker,* 910 F.Supp. 837, 853 (N.D.N.Y.1995); *United States v. Bradley,* 880 F.Supp. 271, 290–91 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 546, 564–66 (E.D.N.Y.1992); *United States v. Pretlow,* 779 F.Supp. 758, 769–71 (D.N.J.1991)

428 U.S. 262, 96 S.Ct. 2950) (holding that "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required"); *Franklin v. Lynaugh*, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155, (1988) (emphasizing that "we have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required"); *United States v. Chandler*, 996 F.2d 1073, 1091–92 (11th Cir.1993) (upholding the constitutionality of an identical provision in the ADAA, 21 U.S.C. § 848, requiring that aggravating factors sufficiently outweigh any mitigating factors before imposing a sentence of death). Therefore we will deny defendant's motion on this point.

### (g)

■ Minerd's next argument is that the statute deprives a defendant of a fair opportunity to rebut the government's evidence at the penalty phase, since it permits the government to open the penalty phase argument, the defendant to reply, and the government to rebut. § 3593(c). Minerd asserts that this statutory scheme deprives him of due process of law and effective assistance of counsel, and makes the sentencing unreliable.

Defendant's argument that the procedural rules for closing arguments are unconstitutional is without merit. This provision mirrors Rule 29.1 of the Federal Rules of Criminal Procedure, which governs the order of closing arguments in the guilt phase of criminal trials. We find this framework consistent with the government's burden to establish the existence of aggravating factors beyond a reasonable doubt during the penalty phase of a capital trial, and we will deny defendant's motion on this point.

### (h)

Minerd also asserts that the FDPA is unconstitutional because the gatekeeping factors set forth in § 3591(a)(2)(A)-(D), as well as the statutory aggravating factors listed in § 3592, are impermissibly vague and do not truly limit the class of individuals who may face the death penalty.

■ To pass constitutional muster, an aggravating circumstance which makes a defendant eligible for the death penalty must meet two requirements: it may not be constitutionally vague, and it may not apply to every defendant convicted of murder. *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *Stringer v. Black*, 503 U.S. 222, 230–32, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

■ A vague factor undermines the reliability of the sentencing decision because it creates an unacceptable risk that the decision is random, arbitrary, and capricious, in violation of the Eighth Amendment. *Tuilaepa*, 512 U.S. at 974–75, 114 S.Ct. 2630; *Stringer*, 503 U.S. at 230–32, 112 S.Ct. 1130. The Supreme Court has explained that "[f]or purposes of vagueness analysis, however, in examining the propositional content of a factor, our concern is that the factor have some 'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" *Tuilaepa*, 512 U.S. at 975, 114 S.Ct. 2630 (quoting *Jurek*, 428 U.S. at 279, 96 S.Ct. 2950 (White, J., concurring in judgment)). The Court's jurisprudence in this area requires that a jury be given a limiting, or narrowing, definition of the aggravating circumstance. *Walton v. Arizona*, 497 U.S. 639, 653–54, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Indeed, this "channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." *Maynard v. Cartwright*, 486 U.S. 356, 362, 108

S.Ct. 1853, 100 L.Ed.2d 372 (1988) (quoting *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (opinion of Stewart, Powell, and Stevens, JJ.)).

■ In addition, an aggravating factor "may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630 (citing *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993)). To comport with the Eighth Amendment, a "capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (quoting *Zant*, 462 U.S. at 867, 103 S.Ct. 2733). This is in keeping with the function of the aggravating factors in the sentencing scheme, which has been described as "assist[ing] the jury in distinguishing 'those who deserve capital punishment from those who do not. . . .'" *McVeigh*, 944 F.Supp. at 1488 (quoting *Arave*, 507 U.S. at 474, 113 S.Ct. 1534).

With these legal principles in mind, we turn to Minerd's constitutional challenges to the statutory aggravating factors.

■ Defendant first challenges the factor articulated in § 3592(c)(6), which is that "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." Minerd argues that the language

"especially heinous, cruel, or depraved" is too vague to provide guidance to the jury. Standing alone, these words have been acknowledged to be facially vague. *Walton*, 497 U.S. 639, 654, 110 S.Ct. 3047. The FDPA, however, includes the modifying phrase "in that it involved torture or serious physical abuse to the victim." 18 U.S.C. § 3592(c)(6). The Supreme Court has found this language to be constitutionally sufficient to withstand a vagueness challenge. *Maynard*, 486 U.S. at 364–65, 108 S.Ct. 1853; *Walton*, 497 U.S. at 653–55, 110 S.Ct. 3047. *Accord*, *Nguyen*, 928 F.Supp. at 1533–34; *Frank*, 8 F.Supp.2d at 277.

■ In addition, Minerd argues that this factor does not narrow the class of defendants eligible for the death penalty, because it would apply to every intentional killing. We do not agree with this conclusion. We agree, instead, with the *Frank* court, which explained that "[a]lthough every murder involves some physical abuse, not every murder will involve 'torture or serious physical abuse to the victim.'" *Frank*, 8 F.Supp.2d at 278.[2]

Accordingly, we find that 18 U.S.C. § 3592(c)(6) is constitutional, and we will deny defendant's motion on this issue.

■ Defendant also challenges the constitutionality of the aggravating factor set forth in § 3592(c)(9), which states that "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism." 18 U.S.C. § 3592(c)(9). He argues that the phrase

**2.** Similar challenges to the identically worded aggravating factor in continuing criminal enterprise cases brought under 21 U.S.C. § 848(n)(12) have upheld its constitutionality. *See, United States v. Bradley*, 880 F.Supp. 271, 289 (M.D.Pa.1994); *United States v. Pitera*, 795 F.Supp. 546, 558 (E.D.N.Y.1992), *aff'd* 5 F.3d 624 (2d Cir.1993), *cert. denied*, 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994); *United States v. Pretlow*, 779 F.Supp. 758, 773 (D.N.J.1991); *United States v. Cooper*, 754 F.Supp. 617, 623 (N.D.Ill.1990), *aff'd*, 19 F.3d 1154 (7th Cir.1994).

"after substantial planning and premeditation" is vague and that the language cannot be narrowed.

We find that this factor is sufficiently narrowing to provide the jury with guidance. Not every murder involves substantial planning and premeditation. *See, e.g., Frank,* 8 F.Supp.2d at 278; *Tipton,* 90 F.3d at 896; *Spivey,* 958 F.Supp. at 1531.

■■■ Furthermore, we find that it is not unconstitutionally vague, and that the language focuses the jury on the degree of planning that went into the commission of this offense. This provides a "common sense core of meaning" that a jury will be able to understand, and saves the factor from vagueness. *Tuilaepa,* 512 U.S. at 974–75, 114 S.Ct. 2630. We therefore join numerous other courts that have considered the "substantial planning" aggravating factor and held that it is not unconstitutionally vague. *Frank,* 8 F.Supp.2d at 278; *Tipton,* 90 F.3d at 896; *McCullah,* 76 F.3d at 1110; *Flores,* 63 F.3d at 1373–74; *McVeigh,* 944 F.Supp. at 1490.

Defendant's motion will be denied on this point.

Additionally, Minerd takes issue with § 3591(a)(2)(A)-(D), which sets forth the "gatekeeping" factors that the jury must address before even reaching the enumerated aggravating factors.[3] This section, which requires that the jury make initial findings of age and intent, provides in pertinent part as follows:

(a) A defendant who has been found guilty of—

\* \* \*

(2) any other offense for which a sentence of death is provided, if the defendant, as determined beyond a reasonable doubt at the hearing under section 3593—

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act,

shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

18 U.S.C. § 3591(a)(2)(A-D).

■■■ Minerd first argues that factor (a)(2)(D), creating a grave risk of death, is vague and should be declared unconstitutional. We find that the modifying language "grave" has a common sense meaning which would help the jury in making its decision. *Tuilaepa,* 512 U.S. at 974–75, 114 S.Ct. 2630. *See, also, McVeigh,* 944

---

**3.** Defendant's submissions consistently refer to these factors as "aggravators." As this discussion will show, they are not aggravating factors but a threshold provision under which the jury must determine intent.

F.Supp. at 1490. We cannot find that this provision is unconstitutional for vagueness.

Minerd further contends that subsections (A) through (D), which enumerate four types of intentional conduct, are all unconstitutional because they merely repeat an element of the underlying offense. In essence, this is an argument that the FDPA is unconstitutional because the statutory scheme does not distinguish between all those charged under 18 U.S.C. § 844(i), the underlying offense here, and the subgroup of those who should be considered eligible for the death penalty. In the defendant's words, "[v]irtually every murderer or felony-murderer possesses one of the listed mental states." Doc. 66 § F 2 (unpaginated).

Minerd is charged with a violation of 18 U.S.C. § 844(i). The elements of this offense which must be proved at trial are as follows:

1) That the defendant damaged or destroyed property by means of fire and/or explosive;

2) That the property in question was used in interstate or foreign commerce, or in an activity affecting interstate or foreign commerce;

3) That the defendant acted maliciously in committing the offense; and

4) That, as a result of the offense, Deana Mitts and/or Kayla Mitts were killed.

18 U.S.C. § 844(i).

Certainly, there is some overlap between the elements of the offense and the factors enumerated in § 3591(a)(2). The gatekeeping factors, however, do not simply repeat elements of the offense. Furthermore, the duplicitous use of aggravating factors is not unconstitutional as long as the narrowing function is performed at either the guilt phase or the penalty phase of the trial. *Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In *Lowenfield*, the Supreme Court upheld a conviction under the Louisiana death penalty statute where the only aggravating factor found by the jury duplicated an element of the underlying offense of first-degree murder. On appeal, Lowenfield argued that since the jury had already found the elements of the offense during the guilt phase, choosing the identical aggravating factor at the sentencing phase did not require any further narrowing and was therefore unconstitutional. *Id.* at 241, 484 U.S. 231, 108 S.Ct. 546. The Supreme Court rejected that argument, and held that Eighth Amendment requirement that a capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a more severe sentence on a particular defendant, could be performed by the jury at *either* the sentencing phase or the guilt phase of a trial. *Id.* at 244–45, 484 U.S. 231, 108 S.Ct. 546.

*Lowenfield,* then, speaks to two different death penalty schemes, and finds that both satisfy the Eighth Amendment. In Lowenfield's case, the narrowing function was performed during the guilt phase, when the jury found him guilty of murder under a statute that required specific intent. *Id.* at 245, 484 U.S. 231, 108 S.Ct. 546. The fact that the statute permitted the jury to then recommend death based upon a single aggravating factor that was the same as an element of the statute did not render Louisiana's statute unconstitutional, since the jury had already narrowed the class of those eligible for the death penalty at the guilt phase of the trial.

The second framework which *Lowenfield* addressed is the scheme embodied in many other state statutes as well as in the FDPA. Under this rubric, the jury must find at least one aggravating circumstance at the penalty phase of the trial before it

may impose the death penalty. *Id.* at 244, 484 U.S. 231, 108 S.Ct. 546. The Supreme Court upheld the constitutionality of such statutes, concluding that since the jury is required to find at least one aggravating factor, "the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition." *Id.* at 244, 484 U.S. 231, 108 S.Ct. 546 (citing *Zant,* 462 U.S. at 878, 103 S.Ct. 2733). The government asserts that the statute is constitutional under *Lowenfield,* since the requisite narrowing will take place during the guilt phase of the trial.

■■■ We agree that the statute is constitutional under the framework articulated in *Lowenfield.* To begin with, any overlap between the offense charged in this case and the gatekeeping factors is not constitutionally significant because the statute charged has already narrowed the class of death-eligible defendants. This satisfies the Eighth Amendment. Under *Lowenfield,* then, defendant's argument that the duplication between the offense charged and the dictates of § 3591(a)(2)(A)-(D) renders the FDPA unconstitutional must fail.

■■■ However, we also conclude that § 3591(a)(2)(A)-(D) would be constitutional even if the offense charged did not include an element of mens rea. It is clear to us that the statutory scheme narrows the class of death-eligible defendants at two different points of the penalty phase. First, under § 3591(a)(2)(A)-(D), the jury must find that the defendant acted with intent. These factors are not aggravators to be weighed against mitigating factors. Rather, these gatekeeping factors establish what one court has termed a "preliminary qualification threshold." *Webster,* 162 F.3d at 355. *Accord, Cooper,* 91 F.Supp.2d at 110.

Secondly, the FDPA further narrows the jury's discretion by requiring that it find at least one statutory aggravating factor before proceeding to balance aggravating and mitigating factors. § 3593(d). This narrows the class of death-eligible defendants a second time. Although the gatekeeping factors may, and in this case do, overlap the elements of the offense, the enumerated statutory aggravating factors do not. The FDPA explicitly provides that "[i]f no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law." § 3592(d). In other words, the jury cannot recommend the death penalty without finding *both* intent under § 3591(a)(2)(A)-(D), and at least one statutory aggravating factor under § 3592(c). *Accord, Jones,* 132 F.3d at 247–48 (holding that the FDPA narrows the jury's discretion through the findings of intent and aggravating factors at the penalty phase). Thus, we agree with the government that the statute is constitutional under *Lowenfield,* as the requisite narrowing will take place during the guilt phase of the trial.

Therefore, we conclude that the framework of the FDPA narrows the class of death-eligible defendants as required by the Eighth Amendment, so that any overlap between the elements of the offense charged and the gatekeeping factors enumerated in § 3591(a)(2)(A)-(D) does not render the statute unconstitutional. We will deny defendant's motion on this issue.

(i)

Defendant's motion to dismiss the notice of intent next presents an argument that the FDPA is unconstitutional because it does not except from the statute's effect, killings which are justified or committed under circumstances which lessen the Defendant's culpability. Doc. 67 at ¶ 9 (unpaginated). Defendant fails to acknowledge this argument in his accompanying brief.

We reject this point without further comment, except to state that the framework of a criminal trial and of the statute itself provide an opportunity for the defendant to assert any defense or mitigating information he may wish to present.

The motion to dismiss the notice of intent also asserts that the FDPA is unconstitutional because it gives the government the arbitrary power to compel the accused to be sentenced by a jury against his will. Doc. 67 at ¶ 10 (unpaginated). He fails to address this point in his accompanying brief, and we will deny it. We note, however, that the Supreme Court has held that a criminal defendant does not have a unilateral right to waive a jury determination of guilt. As the Court stated in *Singer v. United States,* "[a] defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge...." 380 U.S. 24, 37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). *See, also, Cooper,* 91 F.Supp.2d at 102–103.

### (j)

Minerd further argues that the statute is unconstitutional because it requires the judge to impose a sentence of death if the jury so recommends. This argument appears to be based on the dangers of unchecked prosecutorial discretion, as well as on the failure of the statutory scheme to provide for judicial discretion in sentencing.

■ Defendant fails to cite to any cases to support his contentions, and we find that both of these arguments are without merit. Minerd has not shown that the government abused its discretion in seeking the death penalty in this particular case. He merely makes the conclusory allegation that "the majority of defendants who will face the death penalty will have been selected for the process because of their race, local political concerns, or other impermissible factors." Doc. 66 at ¶ G (unpaginated). Absent any evidence to the contrary, we must presume that this prosecution was undertaken in good faith. *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Frank,* 8 F.Supp.2d at 283.

■ Furthermore, the fact that the FDPA requires a judge to impose a sentence of death if the jury so recommends does not make the statute unconstitutional. The Constitution grants Congress the power to make all laws "necessary and proper" to execute its enumerated powers, which includes the power to enforce its laws with criminal penalties. U.S. Constitution art. I., § 8. As we have previously stated, Congress may seek the assistance of another branch of government, provided that it "formulates 'an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Jones,* 132 F.3d at 239 (*quoting Mistretta,* 488 U.S. at 372, 109 S.Ct. 647). We have already concluded that the FDPA is not an unconstitutional delegation of power. *See supra* Part II(a), pp. 430–32. In a non-capital case, Congress' sentencing power is absolute, and it may legislate mandatory sentences if it so decides. *Harmelin v. Michigan,* 501 U.S. 957, 995–96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). It is well established that in the non-capital criminal case, "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *Ex Parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916).

In a capital case, however, the Supreme Court has "imposed protections that the Constitution nowhere else provides." *Harmelin,* 501 U.S. at 995, 111 S.Ct. 2680 (collecting cases). The Court's death penalty jurisprudence establishes that a capital sentencing scheme must include the individualized determination that a sentence of death is appropriate. *Harmelin,* 501 U.S. at 995, 111 S.Ct. 2680. This individualized capital sentencing doctrine is constitutionally required "because of the qualitative differences between death and all other penalties." Neither Congress nor the states can legislate a mandatory sentence of death. *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Sumner v. Shuman,* 483 U.S. 66, 85, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987). The FDPA provides for individualized sentencing. The statutory requirement that a judge must impose a sentence of death if the jury so recommends does not interfere with the constitutional requirement for individualized sentencing.

We conclude that requiring the judge to impose a sentence of death if the jury so recommends is a valid exercise of Congressional authority, and we will deny defendant's argument that this portion of the FDPA is unconstitutional.

### (k)

The defendant next argues that the process by which defendants are selected for death penalty prosecution is arbitrary, capricious, tainted by racial and economic considerations, and violative of the Fifth and Eighth Amendments. Minerd concedes that there are few limitations upon the discretion of the prosecution in deciding what charges to bring and what penalty to seek.

The government asserts that defendant's argument here is actually a claim of selective prosecution, in violation of the Equal Protection Clause of the Constitution. If Minerd's claim were at all specific, we would agree. As is, however, it does not appear to us that he has alleged that he has been singled out for prosecution under the FDPA while other similarly situated have not.

The defendant makes only the most general of allegations here, arguing that the overwhelming percentage of capital prosecutions are undertaken against the poor and people of color. Doc. 66 at ¶ H (unpaginated). We reject his contention that the process by which individuals are selected for the death penalty is unconstitutional. A prosecutor has wide discretion in deciding whether to seek the death penalty. *McCleskey v. Kemp,* 481 U.S. 279, 296–97, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Furthermore, as we have previously stated, absent any evidence to the contrary, we must presume that this prosecution was undertaken in good faith. *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. 663.

### (l)

Finally, Minerd urges that the statute is unconstitutional because the death penalty itself is cruel and unusual punishment in violation of the Eighth Amendment. This argument must be denied because it is contrary to controlling authority. *McCleskey,* 481 U.S. 279, 296–97, 300–302, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Gregg v. Georgia,* 428 U.S. 153, 169, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

### (m)

We have carefully considered the arguments of the parties on all issues raised in defendant's Motion to Dismiss Notice of Intent to Seek the Death Penalty (Doc. 67), as well as the applicable law. For the reasons set forth above, we will deny said motion in its entirety.

## II.

**Motion to Dismiss the Prosecution's Request to Kill Joseph Minerd for the Reason that the Prosecution's Notice and the Notice Provision of 18 U.S.C. § 3593 Violate the Fifth Amendment to the United States Constitution (Doc. 72)**

■ Defendant asserts that § 3593, which directs the government to provide notice to a defendant that it will seek the death penalty if a conviction is obtained and which provides the framework for such notice, violates the indictment clause of the Fifth Amendment. Minerd argues that this provision of the FDPA is unconstitutional because it permits the prosecutor to make a decision that is properly vested in a Grand Jury.

■ Under the indictment clause, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The purpose of the indictment is to put the defendant on fair notice of the charges he must defend against, and to enable him to assert an acquittal or conviction for double jeopardy purposes. *United States v. Haddock*, 956 F.2d 1534, 1542 (10th Cir.), *cert. denied*, 506 U.S. 828, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992). An offense which may be punishable by death must be prosecuted by indictment. Fed.R.Civ.P. 7(a). Whether to seek the death penalty, however, is a decision reserved to the discretion of the prosecution. *McCleskey*, 481 U.S. at 296–97, 107 S.Ct. 1756.

Defendant refers us to *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and *Smith v. United States*, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959). Neither supports his position on this issue. *Smith* held that where the potential punishment is death, the govern-

ment must charge by indictment before a grand jury and not by information. The defendant was properly charged by Grand Jury indictment in this case. *Furman* struck down the Georgia capital punishment scheme on various constitutional grounds, none of which are applicable to Minerd's argument that the decision to seek the death penalty should be made by a Grand Jury.

Furthermore, the factors in the notice of intent are not elements of the offense which must be contained in the indictment. *See, e.g. United States v. Spivey*, 958 F.Supp. 1523, 1527–28 (D.N.M.1997); *McVeigh*, 940 F.Supp. at 1581–82, *aff'd* in *United States v. Nichols*, 169 F.3d 1255 (10th Cir.1999), *cert. denied*, 528 U.S. 934, 120 S.Ct. 336, 145 L.Ed.2d 262 (1999); *Nguyen*, 928 F.Supp. at 1545.

Accordingly, defendant's motion entitled "Motion to Dismiss the Prosecution's Request to Kill Joseph Minerd for the Reason that the Prosecution's Notice and the Notice Provision of 18 U.S.C. § 3593 Violate the Fifth Amendment to the United States Constitution" (Doc. 72) will be denied.

## III.

**Motion to Strike Various Specifications of the Prosecution's Notice of Intent to Seek the Death Penalty (Doc. 69)**

By this motion, Minerd moves to strike the prosecution's notice of intent, item by item, as vague, duplicitous, and otherwise unconstitutional in violation of the Fifth, Sixth and Eighth Amendments to the Constitution. In many respects, this motion duplicates defendant's motion to dismiss the notice of intent filed at Doc. 67, which we have previously denied.

### (a)

 Without citing any case authority, defendant first argues that the gatekeeping factors, found in § 3591(a)(2)(A)-(D) are unnecessary and duplicitous. Minerd contends that only one of these factors, asserting that the defendant intentionally killed the victim, § 3591(a)(2)(A), even arguably applies to his case, and that the other three factors are subsumed within the first factor.

Under the FDPA, if a conviction is obtained so that the case moves to the penalty phase, the jury must initially determine whether the government has proved one of the four intentions set forth in § 3591(a)(2)(A). The jury must be unanimous in finding that one of the intentions has been proved. This portion of the statute assures that a sentence of death may only be imposed for an intentional killing. *McVeigh*, 944 F.Supp. at 1488.

We reject defendant's conclusory statement that by "expanding one factor into four," the statute "improperly places the prosecution's thumb on the scales in favor of the death sentence." Doc. 70 (unpaginated). We have already concluded that these gatekeeping factors are not aggravators, but rather establish a preliminary threshold of intent in a capital case. *See supra* Part I(h), p. 440. *Accord, Webster*, 162 F.3d at 355; *Cooper*, 91 F.Supp.2d at 110. Under the statutory framework, it makes no difference whether the jury agrees that one of the factors has been proved or whether all have been proved. Agreement on just a single factor moves the jury to consideration of the aggravating and mitigating factors under § 3592. Furthermore, even if the jury finds that more than one of the intentions have been established, this cannot tip the balance towards a sentence of death because the gatekeeping factors under the FDPA are not weighed. *Accord, Webster*, 162 F.3d at 355; *Cooper*, 91 F.Supp.2d at 110.

Accordingly defendant's argument is unavailing and will be denied.

### (b)

Minerd also challenges for vagueness the six aggravating factors specified in the government's notice of intent to seek the death penalty. These aggravating factors are: (1) Death During Commission of Another Crime; (2) Grave Risk of Death to Additional Persons; (3) Heinous, Cruel, or Depraved Manner of Committing Offense; (4) Substantial Planning and Premeditation; (5) Vulnerability of Victim; and (6) Multiple Killings or Attempted Killings.

We have previously rejected the defendant's argument that the FDPA is unconstitutional because the statutory aggravators are so vague that they do not meaningfully narrow the class of those eligible for the death penalty. This section of the statute is constitutional. *See supra* Part I(b), pp. 432–33. To briefly summarize, the applicable law, an aggravating circumstance which makes a defendant eligible for the death penalty must meet two requirements in order to pass constitutional muster: it may not be constitutionally vague, and it may not apply to every defendant convicted of murder. *Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630; *Stringer*, 503 U.S. at 230–31, 112 S.Ct. 1130. To withstand a challenge for vagueness, the factor must have some 'common-sense core of meaning ... that criminal juries should be capable of understanding.' *Tuilaepa*, 512 U.S. at 975, 114 S.Ct. 2630. The Court's jurisprudence in this area requires that a jury be given a limiting, or narrowing, definition of the aggravating circumstance. *Walton*, 497 U.S. at 653–54, 110 S.Ct. 3047.

In addition, an aggravating factor "may not apply to every defendant convicted of

murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630 (citing *Arave*, 507 U.S. at 474, 113 S.Ct. 1534). The Eighth Amendment requires that a "capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield*, 484 U.S. at 244, 108 S.Ct. 546 (quoting *Zant*, 462 U.S. at 867, 103 S.Ct. 2733).

In addressing and denying defendant's motion to dismiss the notice of intent, we have already applied these legal principles to two of the aggravating factors. We held that the factors articulated in § 3592(c)(6), which is that defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim, and in § 3592(c)(9), which states that the defendant committed the offense after substantial planning and premeditation to cause the deaths of one or more persons, are not vague and are sufficiently narrowing to provide the jury with guidance in making its decision. Therefore, these factors withstand constitutional scrutiny, and we will deny defendant's motion to dismiss these factors without further discussion. *See supra* Part I(h), pp. 436–38.

We turn now to the constitutionality of those aggravating factors the defendant has not previously challenged.

**Death During Commission of Another Crime**

This aggravating factor states that death or injury resulting in death occurred during the commission or attempted commission of, or during the immediate flight from the commission of, the offense of maliciously damaging and destroying, by means of fire and an explosive, a building which was used in interstate commerce and in an activity affecting interstate commerce, as charged under 18 U.S.C. § 844(i).

Defendant gives a rather circular argument that we must strike this aggravating factor because Minerd is only charged with one offense, and that there is no "other crime." This argument is without merit. As one district court rejecting a similar challenge to the use of death during the commission of another crime as an aggravating factor, has concluded, "[b]y passing 18 U.S.C. § 844(i) and making it a death eligible offense, Congress necessarily made the determination that the offense itself, when resulting in a death, is particularly relevant and related to the decision of who should live and who should die." *United States v. Johnson*, 136 F.Supp.2d 553, 559 (W.D.Va.2001).

▆▆▆▆ To the extent that the defendant may be suggesting that this factor should be stricken because it duplicates an element of the offense, we note that this would not render an aggravating factor unconstitutional. The Supreme Court has held that a jury may constitutionally consider the circumstances of the crime when deciding whether to impose a sentence of death. *Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630. Likewise, during sentencing, a jury may consider crimes for which the defendant has been found guilty beyond a reasonable doubt. *See, e.g., Jones*, 132 F.3d at 249 ("Repetition of the elements of the crime as an aggravating factor [does] not contradict the constitutional requirement that aggravating factors genuinely narrow the jury's discretion"); *Johnson*, 136 F.Supp.2d at 559; *United States v. Bin Laden*, 126 F.Supp.2d 290, 301 (S.D.N.Y.2001) (quoting *Cooper*, 91 F.Supp.2d at 108–09).

We therefore find that this aggravating factor is constitutional and will deny defendant's motion on this issue.

### Grave Risk of Death to Additional Persons § 3592(c)(5)

In this provision, the government states that the defendant, in the commission of the offense, or in escaping apprehension for the offense, knowingly created a grave risk of death to one or more persons in addition to the victims of the offense.

■■■ Minerd argues that this aggravating factor must be stricken because it duplicates § 3591(a)(2)(D). We have already determined that the latter is a statutory gatekeeping factor. As such, it is not an aggravating factor, and thus any duplication is not constitutionally significant. *See supra* Part I(h), p. 440. *Accord, Webster,* 162 F.3d at 355; *Cooper,* 91 F.Supp.2d at 110. Furthermore, these provisions are not duplicative. The gatekeeping factor goes to the defendant's intent to create a grave risk of death to the victims of the offense. The aggravating factor refers to the risk Minerd's conduct posed to those who were not directly targeted by the offense. Minerd is charged with maliciously damaging and destroying, by means of fire and an explosive, a residential building. 18 U.S.C. § 844(i). Certainly a jury could find that the defendant knowingly created a grave risk of death for residents of that building other than Deana and Kayla Mitts. Not every defendant to a charge brought under § 844(i) would have created such risk to other individuals.

We find that this aggravating factor is not vague and sufficiently channels the jury during the penalty phase, and thus conclude that it is constitutional. Therefore we will deny defendant's motion on this point.

### Vulnerability of Victim § 3592(c)(11)

■■■ This aggravating factor states that the victims were particularly vulnerable due to old age, youth, or infirmity. Defendant argues that this aggravator may only be used where the victim is selected because of age, and that there is no suggestion that three-year old Kayla was a target.

We disagree with defendant's interpretation of this factor, and conclude that under the plain language of the statute the aggravator refers to the age or physical characteristics of the victim, and not to whether she was targeted because of those qualities. *See, e.g., United States v. Paul,* 217 F.3d 989, 1001 (8th Cir.2000) (holding that the vulnerable victim aggravating factor was appropriate because the victim was eighty-two years old and less physically able to resist his attackers). We are satisfied that a three-year old child is vulnerable within the meaning of the statute, since she would have been completely dependent upon her mother for protection. It is equally clear to us that Deana Mitts, being eight months pregnant at the time of the explosion, was a vulnerable victim in that such an advanced stage of pregnancy would have made it very difficult to quickly escape her apartment. We find that this factor is constitutional and will deny defendant's motion that it be stricken.

### Multiple Killings or Attempted Killings § 3592(c)(16)

■■■ This factor contends that the defendant intentionally killed or attempted to kill more than one person in a single criminal episode. Minerd argues that it must be stricken because it duplicates the factor alleging that he intentionally killed Deana and Kayla Mitts. As we have previously stated, the latter is a statutory gatekeeping, or eligibility, factor. As such, it is not an aggravating factor, and thus any duplication is not constitutionally significant.

*See supra* Part I(h), p. 440. *Accord, Webster,* 162 F.3d at 355; *Cooper,* 91 F.Supp.2d at 110. Furthermore, these provisions are not duplicative. The gatekeeping factors address the defendant's intent to commit the offense, while the aggravating factor asserts that more than one death resulted from the defendant's intentional conduct. We conclude that this aggravating factor withstands constitutional scrutiny and will deny defendant's motion that it be stricken from the notice of intent.

### (c)

Finally, Minerd moves to strike the non-statutory aggravating factors identified under § 3593(a)(2).

■ Section C of the government's notice of intent sets forth the following three non-statutory aggravators, all under the heading of victim impact evidence: (1) defendant caused injury, harm, and loss to Deana Mitts' family because of her personal characteristics as an individual human being and the impact of her death upon her family; (2) defendant caused injury, harm, and loss to Kayla Mitts' family because of her personal characteristics as an individual human being and the impact of her death upon her family; and (3) defendant caused injury, harm, and loss to Deana Mitts' family as a result of the death of her unborn child, a girl whom Deana Mitts had named "Jessica."

Defendant has raised the same general objection to each one, contending that they are merely allegations that there is victim impact evidence, and that the allegations contained in the notice are not specific enough to separate Minerd from every other defendant who is accused of intentional murder.

■ Victim impact evidence during the penalty phase of a capital case, which is designed to show "each victim's uniqueness as an individual human being," does not violate the Eighth Amendment. *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (rejecting constitutional challenge to victim impact evidence as overbroad and vague). The FDPA permits such testimony as long as the government gives notice to the defendant. The statute expressly provides that "[t]he factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family . . . ." § 3593(a). We find that the notice provided in this case conforms with the statutory requirements, and that the statute is constitutional insofar as it permits victim impact testimony. Defendant's motion will accordingly be denied on this point.

### (d)

We have considered each of defendant Minerd's challenges to the government's notice of intent to seek the death penalty and found each provision of said notice to be constitutional. Accordingly, defendant's Motion to Strike Various Specifications of the Notice of Intent (Doc. 69) will be denied.

### IV.

### Motion for a Bill of Particulars Regarding Aggravating Factors (Doc. 68)

■ Defendant seeks further specific information regarding the aggravating factors listed in the government's notice of intent. We find no legal basis for granting this motion. The notice of intent fully complies with the requirements of the statutory scheme, as set forth in § 3592(c) (aggravating factors for homicide) and § 3593(a)(2) (notice requirement for aggravating factors), in that it identifies the aggravating factors that the government

intends to prove if the defendant is convicted and the case enters the penalty phase. Whether or not to order a bill of particulars is within the sound discretion of the district court. Fed.R.Civ.P. 7(f). We find that the indictment and notice of intent to seek the death penalty in this case sufficiently advise the defendant of the charges he must be prepared to defend at trial. Defendant's motion for a bill of particulars regarding aggravating factors (Doc. 68) will therefore be denied.

### V.

For the reasons set forth above, the following motions, filed by defendant Joseph Minerd, will be denied: Motion to Dismiss Notice of Intent to Seek the Death Penalty (Doc. 67); Motion to Dismiss the Prosecution's Request to Kill Joseph Minerd for the Reason the Prosecution's Notice and the Notice Provision of 18 U.S.C. § 3593 Violate the Fifth Amendment to the United States Constitution (Doc. 72); Motion to Strike Various Specifications of the Prosecution's Notice of Intent to Seek the Death Penalty (Doc. 69); and Motion for a Bill of Particulars Regarding Aggravating Factors (Doc. 68).