### UNITED STATES of America

v.

### Michael J. O'DRISCOLL

### No. 4:CR–01–277.

United States District Court, M.D. Pennsylvania.

Feb. 15, 2002.

James T. Clancy, Esq., Eric Pfisterer, Esq., U.S. Attorney's Office, Harrisburg, for United States of America.

Ronald C. Travis, Esq., Rieders, Travis, Humphrey, Harris & Waffenschmidt, Williamsport, David A. Ruhnke, Esq., Ruhnke & Barrett, Montclaire, NJ, for Michael J. O'Driscoll.

## *OPINION*

MUIR, District Judge.

### I. Background.

On August 29, 2001, a federal grand jury returned an indictment charging Michael J. O'Driscoll with murder in the first degree. The indictment states in toto as follows:

On or about June 1, 1997, at the Allenwood Federal Correctional Complex, United States Penitentiary, in Union County, Pennsylvania, on land acquired for the exclusive use of the United States, under the exclusive jurisdiction of the United States and within the Middle District of Pennsylvania, the defendant,

### MICHAEL J. O'DRISCOLL

willfully, deliberately, maliciously, unlawfully, and with premeditation and malice aforethought, did kill Robert M. Frankhouser by stabbing him.

All in violation of Title 18, United States Code, Section 1111(a) and (b).[1]

On September 21, 2001, O'Driscoll appeared before the court for arraignment and entered a not guilty plea. On October 9, 2001, the government filed a notice of its intent to pursue the death penalty.[2] This case is presently on the May, 2002, trial list with a pretrial conference scheduled for March 25, 2002, at 2:00 p.m.

On November 8, 2001, O'Driscoll filed eleven pretrial motions, including a motion entitled "Motion to Bifurcate Trial, Summoning and Empaneling a Second Jury Only In the Event of Conviction of First–Degree Murder." By order of December 18, 2001, we denied O'Driscoll's so-called motion to bifurcate. Briefs in support of the ten other pretrial motions were filed on December 21, 2001. The government's briefs in opposition were filed on January 25, 2002. The motions became ripe for disposition on February 8, 2002, when O'Driscoll filed some reply briefs and elected not to file others.[3] With the exception of two motions that are interrelated,

---

1. Section 1111 states as follows:
 (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
 Any other murder is murder in the second degree.
 (b) Within the special maritime and territorial jurisdiction of the United States,
 Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;

 Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

2. In 1984 O'Driscoll who is Caucasian was sentenced by the United States District Court for the District of Colorado to a term of imprisonment of 25 years for armed bank robbery and a consecutive term of imprisonment of 300 years for kidnapping. *United States v. O'Driscoll*, 586 F.Supp. 1486, 1494–1495 (D.Colo.1984)(Kane, J.). Those sentences were affirmed by the Court of Appeals for the Tenth Circuit. *United States v. O'Driscoll*, 761 F.2d 589 (10th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986).

3. O'Driscoll filed reply briefs with respect to only five of the ten motions.

we will address O'Driscoll's motions in the order in which they appear on the court's docket.

## II. Pretrial Motions.

A. O'Driscoll's motion entitled "Motion to Strike Non–Statutory Aggravating Factor No. 3 or in the Alternative for Discovery with respect to Non–Statutory Aggravating Factor No. 3." (Doc. 28)

O'Driscoll requests that the non-statutory aggravating factor No. 3 of victim impact evidence set forth at pages 6 and 7 of the government's notice of intent to seek the death penalty be stricken. That portion of the government's notice states as follows:

3. Victim Impact Evidence. As reflected by the victim's personal characteristics as an individual human being and the impact of the offense on the victim and the victim's family, the defendant caused loss, injury, and harm to the victim and the victim's family, *see Payne v. Tennessee,* 501 U.S. 808, 825–827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), including, but not limited to, the following:

a) Characteristics of victim—The defendant caused the death of Robert M. Frankhouser, another federal inmate who had served almost all of his term of incarceration. Frankhouser was considered a highly trustworthy inmate by prison staff and held the position of hospital orderly;

·b) Impact of the offense on the family of the victim—The victim's family has suffered severe and irreparable harm. The victim's family was looking forward to the victim's release from prison so he could start a new life. They forever will be denied the ability to share that life with their family member.

In the alternative O'Driscoll requests permission to engage in discovery relating to this factor.

The Federal Death Penalty Act of 1994 permits a jury to consider victim impact evidence.[4] Specifically, § 3593 states in relevant part as follows:

The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.

Victim impact evidence has been found to be an appropriate subject for a jury to consider. *Payne v. Tennessee,* 501 U.S. 808, 825–827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *see also United States v. Minerd,* 176 F.Supp.2d 424, 448 (W.D.Pa.2001)(Cohill, J.)("Victim impact evidence during the penalty phase ... does not violate the Eighth Amendment.... The [Federal Death Penalty Act] permits such testimony as long as the government gives notice to the defendant.").

In a prior death penalty case, *United States v. Hammer,* No. 4:CR–96–239 (M.D.Pa. indictment filed Sept. 18, 1996), we permitted the jury to consider as an aggravating factor the impact of the killing on the family of the victim. In that case we instructed the jury as follows:

The government has alleged as an aggravating factor the impact the murder of Andrew Marti has had on Andrew Marti's family. In order for you to consider the impact of the murder on the family of Andrew Marti, the government

---

**4.** *See* 18 U.S.C. § 3591, et seq.

must prove beyond a reasonable doubt that David Paul Hammer caused some injury or harm to Andrew Marti's family, which injury or harm may be physical, medical, financial, social, psychological or emotional.

Furthermore, the question presented to the jury relating to victim impact evidence was as follows:

Does the jury unanimously find that the Government has established beyond a reasonable doubt that David Paul Hammer caused harm to the family of Andrew Marti as a result of the impact of the killing upon the family? [5]

We see no reason to deviate from our decision in the *Hammer* case. The consequences of O'Driscoll's action in taking the life of Mr. Frankhouser, if the jury finds O'Driscoll guilty of first-degree murder, are clearly an appropriate subject for the jury's consideration. *See United States v. Bin Laden,* 126 F.Supp.2d 290, 300 (S.D.N.Y.2001)(Sand, J.)("Certainly, the deleterious effects of a capital defendant's actions are an appropriate subject of sentencing consideration."). We will deny O'Driscoll's motion to strike from the government's notice of intent to seek the death penalty the non-statutory aggravating factor of victim impact evidence.

In the alternative O'Driscoll requests discovery regarding the victim impact evidence. O'Driscoll argues that because of the government's use of the language "including, but not limited to" in paragraph 3 of its notice to seek the death penalty he is unable to investigate and prepare for the witnesses or evidence the government may try to present. O'Driscoll claims that the notice is vague because it does not identify the family members or set forth details as to the nature of the harm suffered. O'Driscoll also argues · that we are

"charged with the responsibility of restricting the presentation of victim impact evidence so that the emotion inherently associated with such evidence does not overwhelm the jury's obligation to make a reliable, individualized sentencing determination based upon a full and fair consideration of all mitigating and all aggravating circumstances." Doc. 49, O'Driscoll's Brief in Support, page 10.

■ The presentation of victim impact evidence can be problematic because of the potential for emotional outbursts during the testimony of family members. One district court in commenting on victim impact evidence stated as follows:

This is the most problematical of all of the aggravating factors and may present the greatest difficulty in determining the nature and scope of the "information" to be considered. Congress expressly provided for victim impact consideration in the Death Penalty Statute but did not put any limits on what can be considered. § 3593(a). That is a matter for the court's discretion and must be determined with consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice.

*United States v. McVeigh,* 944 F.Supp. 1478, 1491 (D.Colo.1996)(Matsch, J.). Victim impact testimony cannot be totally divorced from emotion. However, the court has an obligation to keep the emotions of witnesses in check so that the jury is, as noted by Judge Matsch, not "influenced by passion or prejudice."

■ In order to evaluate the potential prejudice of victim impact testimony, one court required the government to submit a written statement describing the proposed testimony of each victim impact witness.

5. *See* Doc. 572, Special Findings Form Regarding the Punishment to be Imposed Upon David Paul Hammer for the Killing of Andrew Marti.

*United States v. Glover*, 43 F.Supp.2d 1217, 1235–36 (D.Kan.1999)(Lungstrum, J.). The court also adopted instructions to be given the witnesses relating to control of their emotions at the time their testimony was presented. *Id.*

We are not convinced that the government's notice of intent to seek the death penalty is so vague that it is impossible for defense counsel to undertake an investigation and prepare a defense. However, out of an abundance of caution we will adopt procedures similar to those adopted by the district court in *Glover*.[6]

B. O'Driscoll's motions entitled "Motion to Dismiss Notice of Aggravating Factors, and/or for Discovery and a Hearing, Since Mr. O'Driscoll has been Unfairly, Arbitrarily, and Capriciously Targeted for Capital Punishment" and "Motion for Discovery and a Hearing and to Dismiss the Notice of Aggravating Factors on the Grounds that the Federal Death Penalty is Sought on the Impermissible Basis of Race and Arbitrary Basis of Region." (Docs. 29 and 36)

O'Driscoll requests that we strike the government's notice of intent to seek the death penalty or in the alternative permit him to engage in discovery regarding the government's decision to pursue the death penalty. O'Driscoll basically argues that there have been numerous murders by federal inmates of other inmates and in only a handful of those cases has the government sought the death penalty. O'Driscoll claims that because of the low number of capital prosecutions the government's pursuit of the death penalty in his case is arbitrary and capricious. He further argues that the death penalty has been pursued on the arbitrary basis of race and region.

The decision to prosecute, including the decision to seek the death penalty, rests with the prosecutor. *See Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Nguyen*, 928 F.Supp. 1525, 1544–45 (D.Kan.1996)(Belot, J.); *United States v. Bradley*, 880 F.Supp. 271, 278–81, 291 (M.D.Pa.1994)(Rambo, J.); *United States v. Pretlow*, 779 F.Supp. 758, 776–77 (D.N.J.1991)(Raggi, J.). The mere fact that the government has only sought the death penalty in a small number of murder cases involving federal inmates is not sufficient to demonstrate that the prosecution of O'Driscoll is arbitrary and capricious. *Id.* Furthermore, the fact that a greater number or fewer death penalty cases are brought in other regions of the country does not establish that the pursuit of the death penalty in this case is arbitrary and capricious. *United States v. Bin Laden*, 126 F.Supp.2d 256, 263 (S.D.N.Y. 2000)(Sand, J.). More is required. O'Driscoll must show that the government is seeking the death penalty for an impermissible reason, such as race, religion, or in retaliation for exercising his right to trial by jury. *Id.*

---

6. We will give serious consideration to a motion filed by either the government or O'Driscoll requesting that the testimony of the victim impact witnesses be videotaped and presented to the jury in that manner at the time of trial. This procedure would eliminate the possibility of emotional and potentially prejudicial outbursts of witnesses during live testimony before the jury. If live testimony is presented we will instruct each witness that if the witness is unable to control his or her emotions the witness will not be permitted to testify. Furthermore, as the district court did in *Glover* we will advise each witness to refrain from giving any opinions about the defendant, the crime, or the appropriate sentence.

█] To the extent that O'Driscoll is claiming that he is the victim of selective or discriminatory prosecution, in order to prevail on such a claim he must show that the decision to prosecute had both a discriminatory effect and a discriminatory intent. *See United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). A discriminatory effect is demonstrated by establishing that "similarly situated individuals" were treated differently. *Id.* A discriminatory intent is demonstrated by the existence of racial, religious or other impermissible animus. O'Driscoll must demonstrate that "the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)(emphasis in original).

█ Before there can be discovery on a claim of selective prosecution, a defendant must first establish a "colorable" claim of selective prosecution. *Bradley,* 880 F.Supp. at 279. Furthermore, the "evidence [must be] specific to [the defendant's] own case that would support an inference that racial consideration [or other impermissible factor] played a part" in the prosecutor's decision to seek the death penalty. *McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756. Also, a hearing on such a claim "is necessitated only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *United States v. Eklund,* 733 F.2d 1287, 1290 (8th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985) (citations omitted). Most importantly, however, "[t]here is a presumption that prosecutions are commenced in good faith and without discriminatory motive." *Bradley,* 880 F.Supp. at 278.

O'Driscoll has failed to proffer any evidence from which it can be concluded that the government is seeking the death penalty for an impermissible reason. O'Driscoll's reliance on a United States Department of Justice statistical study of the federal death penalty system is misplaced. *See Bin Laden,* 126 F.Supp.2d at 258–63. We will deny O'Driscoll's motions requesting that we strike the government's notice of intent to seek the death penalty or in the alternative permit him to engage in discovery regarding the government's decision to pursue the death penalty.

C. O'Driscoll's motion entitled "Motion to Dismiss Non–Statutory Aggravating Factors on the Basis that Congress did not Enact 'Proportionality Review' as Part of the Federal Death Penalty Act of 1994." (Doc. 30)

The Federal Death Penalty Act of 1994 is a weighing statute, *i.e.,* a jury in deciding whether to impose the death penalty is required to weigh the aggravating circumstances and mitigating circumstances and only recommend the death penalty if the aggravating circumstances outweigh the mitigating circumstances. Relying on *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), O'Driscoll argues that a weighing statute may not constitutionally resort to non-statutory aggravating factors without also providing for mandatory comparative proportionality review and, therefore, requests that the non-statutory aggravating factors set forth in the government's notice of intent to seek the death penalty be dismissed.

█ Comparative proportionality review in death penalty cases involves an appellate determination of whether or not a sentence of death in one case is arbitrary or capricious by comparing it to the sentences imposed in similar cases. *See Pulley v. Harris,* 465 U.S. 37, 43, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). The Constitu-

tion does not require proportionality review of death sentences. *Id.* In *Pulley* the Supreme Court stated:

> [W]e did not hold [in *Zant*] that without comparative proportionality review the statute would be unconstitutional. To the contrary, we relied on the jury's finding of aggravating circumstances, not [an appellate court's] finding of proportionality, as rationalizing the sentence. Thus, the emphasis was on the constitutionally necessary narrowing function of statutory aggravating circumstances. Proportionality review was considered to be an additional safeguard against arbitrarily imposed death sentences, but certainly did not hold that comparative review was constitutionally required.

465 U.S. at 50, 104 S.Ct. 871 (citations omitted).

O'Driscoll argues that *Pulley* is limited to cases in which the sentence is based only upon statutory aggravating factors. This argument has been rejected by several district courts. *See, e.g., Nguyen,* 928 F.Supp. at 1537; *Bradley,* 880 F.Supp. at 284; *see also United States v. Llera Plaza,* 179 F.Supp.2d 444, 456 (E.D.Pa.2001)(Pollak, J.) (proportionality review not required); *Minerd,* 176 F.Supp.2d at 433 (same); *United States v. Cooper,* 91 F.Supp.2d 90, 99 (D.D.C.2000)(Green, J.)(same); *McVeigh,* 944 F.Supp. at 1486 (same). Furthermore, in the *Hammer* case we rejected the argument and we will again reject it.[7] We find no merit in O'Driscoll's argument.

D. O'Driscoll's motion entitled "Motion to Dismiss Certain of the Statutory and Non–Statutory Aggravating Factors as Vague or Duplicative." (Doc. 31)

O'Driscoll requests that the following items be stricken from the government's notice of intent to pursue the death penalty: (1) the statutory aggravating factor of "substantial planning and premeditation" because the factor is unconstitutionally vague; (2) the non-statutory aggravating factor of "future dangerousness" because it is vague and duplicative of other allegations in the notice of aggravating factors; (3) the allegation that O'Driscoll has a "low rehabilitative potential" because the allegation is vague and irrelevant; and (4) the allegation that O'Driscoll has shown a "lack of remorse" because that allegation is also vague and irrelevant.

Because the government is seeking the death penalty the trial in this case will be a bifurcated proceeding. If the jury finds O'Driscoll guilty of the charge of first-degree murder, the jury then must determine whether he should receive the death penalty. This determination requires that the jury pass through several stages. Initially, the jury must determine whether O'Driscoll had the requisite "intent" in committing the offense. 18 U.S.C. § 3591(a)(2). If the jury determines beyond a reasonable doubt that O'Driscoll had at least one of the required "intent" factors set forth in § 3591(a)(2), the jury proceeds to the second stage. However, if the jury does not find the requisite intent, the deliberations are over and the death penalty cannot be imposed.

If the jury reaches the second stage of the death penalty phase, the jury must consider the statutory aggravating factors set forth in the government's notice of intent to pursue the death penalty. 18 U.S.C. § 3592(c). For the death penalty to be imposed, the jury must find that the government has proven beyond a reasonable doubt at least one statutory aggrava-

---

**7.** *See* order of September 25, 1997 (Doc. 201).

ting factor. If the jury so finds, they proceed to the next stage. If the jury does not find at least one statutory aggravating factor, the death penalty cannot be imposed.

The third stage involves the jury considering any non-statutory aggravating factors alleged by the government. Finally, the fourth stage involves the jury (1) weighing the statutory and non-statutory aggravating factors which the jury has found to exist beyond a reasonable doubt by a unanimous vote against any mitigating factors and (2) deciding whether the aggravating factors outweigh all the mitigating factors found to exist.[8] "Based upon this consideration, the jury by a unanimous vote" shall recommend either death or life imprisonment. 18 U.S.C. § 3593(e).

▮▮▮ The Federal Death Penalty Act of 1994, as noted above, is a weighing statute. Under a weighing statute aggravating factors, whether statutory or non-statutory, may not be alleged in duplicative fashion. *See United States v. McCullah*, 76 F.3d 1087, 1111–12 (10th Cir.1996). This is to avoid the effect of having the same conduct or circumstance found repeatedly and weighed repeatedly. Duplicative factors have the undeniable tendency to undermine the integrity of the weighing process because the same factor may be weighed more than once by the jury. *Id.* An aggravator which is a subset of another "has a tendency to skew the weighing process and creates the risk that a death sentence will be imposed arbitrarily and thus, unconstitutionally." *Id.* In essence duplica-

tive factors stack the deck in favor of death.

▮▮▮ In order to overcome a claim that an aggravating factor is unconstitutionally vague the aggravating factor must have a common-sense meaning which a jury can readily understand. *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

▮▮▮ O'Driscoll argues that the statutory aggravating factor "substantial planning and premeditation" is unconstitutionally vague and should be stricken. Several courts have rejected this argument. *See, e.g., United States v. Tipton*, 90 F.3d 861, 896 (4th Cir.1996); *Minerd*, 176 F.Supp.2d at 438–39; *McVeigh*, 944 F.Supp. at 1490. In *Tipton* the Court of Appeals for the Fourth Circuit stated as follows:

> Here, we are satisfied that in total context of the statutory text and the district court's instructions ... "substantial" as a modifier of "planning and premeditation" could only have been understood by the jury to mean a higher degree of planning than would have the words "planning and premeditation" alone— i.e., more than the *minimum amount* sufficient to commit the offense. The district court instructed essentially this vein, that "substantial planning means planning that is considerable, or ample for the commission of a crime at issue in this case: murder." ... We are therefore satisfied that ... the aggravating factor's use of the word "substantial" to modify "planning and premeditation"

---

8. 18 U.S.C. § 3593(c) provides in relevant part that "[t]he burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the evidence." Section 3593(d) states in relevant part as follows:

A finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established.

does not render [the statute] unconstitutionally vague, but instead, conveys with adequate precision a commonly understood meaning of "considerable" or "more than merely adequate," thereby ensuring that ... the factor served sufficiently to channel the jury's discretion in assessing eligibility for the death penalty.

90 F.3d at 896. In *United States v. Hammer*, we let the issue of "substantial planning and premeditation" go to the jury.[9] In that case we instructed the jury as follows:

The words "substantial planning and premeditation" should be given their ordinary, everyday meaning. "Planning" means mentally formulating a method of doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding whether to do it beforehand. "Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation.

In our view the word "substantial" has a meaning that can be readily understood by a jury. We will deny O'Driscoll's request to strike the aggravating factor "substantial planning and premeditation."

 O'Driscoll next argues that the non-statutory aggravating factor of "future dangerousness" is vague and duplicative. We rejected this argument in the *Hammer* case.[10] Future dangerousness to lives and safety of other persons has been found to be a legitimate aggravating factor that a jury can consider during the penalty phase. *Jurek v. Texas*, 428 U.S. 262, 272, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *United States v. Frank*, 8 F.Supp.2d 253, 279 (S.D.N.Y.1998)(Cote, J.). Furthermore, we see no reason to strike the allegations of "low rehabilitative potential" and "lack of remorse" from the government's notice of intent to pursue the death penalty. As we view the government's notice those allegations are not being used as separate aggravating factors but as support for the aggravating factor of future dangerousness. Such use is clearly permissible. *See United States v. Davis*, 912 F.Supp. 938, 945 (E.D.La.1996)(Berrigan, J.)

In *Davis*, although the government attempted to use "lack of remorse" as a separate aggravating factor, the district court did not permit the government to do so. However, the court did not foreclose the use of "lack of remorse" as probative of "future dangerousness." The government in *Davis* proposed to present evidence of the defendant's "alleged jubilation in learning that [the victim] had been killed." *Id.* at 946. The district court held that "[w]hile the government may not assert 'lack of remorse' as an independent nonstatutory aggravating factor, it may argue DAVIS' alleged exultation as information probative of DAVIS' future dangerousness, ...." *Id.; see also Bin Laden*, 126 F.Supp.2d at 303–304 ("[L]ower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the [Federal Death Penalty Act], including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse."). We will, therefore, deny O'Driscoll's request to strike the non-statutory aggravating factor of "future dangerousness" and the allegations of "low rehabilitative potential and 'lack of remorse' from the government's notice of intent to pursue the death penalty."

---

**9.** *See* note 5, *supra*.

**10.** *See* order of September 30, 1997 (Doc. 206).

E. O'Driscoll's motion entitled "Motion to Strike Non–Statutory Aggravating Factors as Violative of the Delegation Doctrine Embodied in the Constitution of the United States." (Doc. 33)

 O'Driscoll requests that the non-statutory aggravating factors set forth in the government's notice of intent to seek the death penalty be stricken on the ground that Congress may not delegate to the executive the authority to determine aggravating factors. Several courts have considered and rejected this non-delegation argument. *United States v. Paul,* 217 F.3d 989, 1003 (8th Cir.2000); *Llera Plaza,* at 453; *Minerd,* 176 F.Supp.2d at 430–32; *Cooper,* 91 F.Supp.2d at 100); *McVeigh,* 944 F.Supp. at 1486; *Davis,* 904 F.Supp. at 558–59; *Bradley,* 880 F.Supp. at 283–84; *United States v. Pitera,* 795 F.Supp. 546, 562 (E.D.N.Y.1992)(Raggi, J.).[11] In the *Hammer* case we rejected the non-delegation argument.[12]

Congress did not impermissibly delegate legislative authority when it enacted the Federal Death Penalty Act of 1994. The function of the prosecutor in identifying non-statutory aggravating factors under that Act is an "exercise in advocacy derived from the executive's discretion to prosecute, not the legislature's power to fix punishment." *Pitera,* 795 F.Supp. at 563. Thus, "[i]n identifying non-statutory aggravating factors pursuant to [the statute],

the prosecution plays virtually the same role in a capital sentencing proceeding as it does in a non-capital one." *Id.* at 562.

In *McVeigh, supra,* the district court in responding to the non-delegation argument stated as follows:

> There is no merit to the defendants' arguments in the context of a sentencing hearing under § 3593. While it is true that Congress did not impose policy limitations or give clear guidance to prosecuting attorneys as to what may be included as non-statutory aggravating factors, the sentencing hearing is governed by the court within the adversary process. Accordingly, the validity of particular non-statutory aggravating factors may be litigated and adjudicated before the court, just as is being done in the present motions. It is then the judicial authority of the court within the factual context of particular cases that controls the sentencing hearing. The guiding principles for judicial determination of the validity of particular non-statutory aggravators is the death penalty jurisprudence developed by the Supreme Court. Thus, the aggravating factors must serve the purpose of selection of the defendant for the special penalty with individual consideration to his character and particular conduct in the offense.

944 F.Supp. at 1486.

In *Cooper, supra,* the district court in rejecting the non-delegation argument ob-

---

**11.** *See also Loving v. United States,* 517 U.S. 748, 768, 116 S.Ct. 1737, 1748–49, 135 L.Ed.2d 36 (1996)(Congress permitted to delegate to the executive branch the authority to define aggravating factors that justify a sentence of death under the Uniform Code of Military Justice); *United States v. Jones,* 132 F.3d 232, 239 (5th Cir.1998) ("The authority to define nonstatutory aggravating factors falls squarely with the Executive's broad prosecutorial discretion, much like the power to decide whether to prosecute an individual for a particular crime."); *McCullah,* 76 F.3d at

1106–07 (same); *Bin Laden,* 126 F.Supp.2d at 296–97 ("'[A] federal prosecutor's ability to define non-statutory aggravating factors is not an impermissible delegation of congressional power[.]'"); *Glover,* 43 F.Supp.2d at 1229 (rejected non-delegation argument on the basis of Tenth Circuit precedent); *Nguyen,* 928 F.Supp. at 1536–37 (same).

**12.** *See* order # 1 of September 26, 1997 (Doc. 202).

served that "the government does not have unbridled discretion in devising non-statutory aggravating factors" because it must give to the defendant advance notice of the aggravating factors and evidence of aggravating factors may not be submitted during the sentencing hearing if its probative value is outweighed by unfair prejudice, confusing the issues or misleading the jury. 91 F.Supp.2d at 100. The court also stated that "the Supreme Court's death penalty jurisprudence guides this Court in determining which aggravating factors may be used" and "the government may not use non-statutory aggravating factors that are unconstitutionally vague or overbroad." *Id.* (citation omitted). Furthermore, in *Davis, supra,* the court observed that "the statutory aggravating factors themselves provide a ready framework for determining Congressional intent and for evaluating the relevance and admissibility of the proposed nonstatutory aggravating factors." 912 F.Supp. at 944.

We agree with the courts which have concluded that the Supreme Court's death penalty jurisprudence and the aggravating factors specifically mentioned in the Federal Death Penalty Act of 1994 give us a framework in which to determine the appropriateness of the non-statutory aggravating factors set forth in the government's notice of intent to pursue the death penalty. O'Driscoll's non-delegation argument is devoid of merit.

F. O'Driscoll's motion entitled "Motion for Bill of Particulars Regarding Aggravating Factors." (Doc. 34)

18 U.S.C. § 3593(a) states in relevant part as follows:

(a) Notice by the government.—If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter,

the attorney shall, a reasonable time before trial or before acceptance by the court of a plea of guilty, sign and file with the court, a notice—

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

The following statutory aggravating factors are alleged in the government's notice of intent to seek the death penalty:

(1) 18 U.S.C. § 3592(c)(2), Previous conviction of violent felony involving firearm;

(2) 18 U.S.C. § 3592(c)(3), Previous conviction of offense for which a sentence of death or life imprisonment was authorized; and

(3) 18 U.S.C. § 3592(c)(9), Substantial planning and premeditation;

The government also alleges the following non-statutory aggravating factors:

(1) Participation in additional charged and uncharged murders, attempted murders, or other serious acts of violence.

(2) Future dangerousness; and

(3) Victim impact evidence.

O'Driscoll seeks the factual details of the aggravating factors listed in the government's notice of intent to seek the death penalty. Specifically, O'Driscoll requests that the government provide him with a Bill of Particulars relating to the following items:

(1) the "Federal or State offense resulting in the death of a person" referred to in ¶ 2, at page 1, of the government's notice of intent to seek the death penalty;

(2) the "additional charged and uncharged murders, attempted murders, or other serious acts of violence" referred to in ¶1, at pages 3 and 4, of the government's notice of intent to seek the death penalty;

(3) the "acts and characteristics" other than those specifically set forth in ¶2, at page 4, of the government's notice of intent to seek the death penalty which support the non-statutory aggravating factor of future dangerousness;

(4) the facts other than those specifically set forth in ¶2, at page 5, of the government's notice of intent to seek the death penalty which "demonstrate a low potential for rehabilitation";

(5) the "actions and statements" alleged at ¶2, p. 6 of the government's notice of intent to seek the death penalty which "demonstrate utter lack of remorse over having committed the offense."

 Rule 7(f) of the Federal Rules of Criminal Procedure provides as follows:

(f) Bill of Particulars. The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

Under this rule, "[a] defendant possesses no right to a bill of particulars and the decision on the motion lies in the sound discretion of the court." *United States v. Burgin*, 621 F.2d 1352, 1358 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). "'The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.'" *United States v. Addonizio*,

451 F.2d 49, 63–4 (3d Cir.1972)(quoting *United States v. Tucker*, 262 F.Supp. 305, 308 (S.D.N.Y.1966)). A motion for a bill of particulars should be granted if the government's failure to allege factual or legal information in the indictment "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989).

Courts have recognized that compliance with the discovery requirements of Rule 16 of the Federal Rules of Criminal Procedure often obviates the need for entry of an order compelling the government to file a bill of particulars. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Deerfield Spec. Papers, Inc.*, 501 F.Supp. 796, 809 (E.D.Pa.1980). Furthermore, a bill of particulars is not a discovery device and "is not intended to provide the defendant with the fruits of the government's investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir.1985). It is well established that "'[a]cquisition of evidentiary detail is not the function of the bill of particulars.'" *United States v. Matlock*, 675 F.2d 981, 986 (8th Cir.1982)(quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir.1968)).

The government in its brief in opposition has noted that it is in the process of having all documentary discovery in this case imaged so that it will be available to the defense on a computer-readable medium. Government counsel further notes that such discovery will have been available to defense counsel by February 8, 2002 so that defense counsel will not have to travel to Harrisburg to view the materials.

 We are not convinced that a motion for a bill of particulars can be utilized to obtain a more detailed statement of the aggravating factors alleged by the government in its notice of intent to seek the

death penalty. *See Minerd,* 176 F.Supp.2d at 448–49 (no legal basis for granting a motion for a bill of particulars requesting details of aggravating factors). A bill of particulars is generally requested because the indictment does not adequately apprise the defendant of the charges. *See, e.g., Addonizio, supra.* The government's notice of intent to seek the death penalty complies with § 3593 in that it specifies the aggravating factors the government intends to prove if O'Driscoll is convicted of first degree murder. The indictment and the government's notice of intent to seek the death penalty filed in this case sufficiently advise O'Driscoll of the charges against which he must be prepared to defend at trial. We will deny O'Driscoll's motion for a bill of particulars.

G. O'Driscoll's motion entitled "Motion to Declare the Death Penalty Unconstitutional As Cruel and Unusual Punishment in All Cases." (Doc. 35)

O'Driscoll argues that the death penalty is unconstitutional in all cases, and as applied to him, because (1) it is racist and represents an intellectually dishonest congressional response to the public's frustration over the inability of elected officials to do anything meaningful about crime, (2) the death penalty has in the past, and inevitably will in the future, lead to the execution of innocent people, (3) the process by which individuals are selected for capital prosecution vests an unacceptable level of unreviewable discretion in prosecuting authorities, and (4) evolving standards of decency will eventually convince the American public that it is wrong and immoral to kill people in an effort to teach people it is wrong and immoral to kill people.

In light of several decisions of the United States Supreme Court, O'Driscoll's arguments are insufficient to find the death penalty unconstitutional. *See, e.g., McCleskey,* 481 U.S. at 296–97, 300–01, 306–07, & 307 n. 28; *Gregg v. Georgia,* 428 U.S. 153, 177–78, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)(opinion of Stewart, Powell, and Stevens, JJ.) (citing two centuries of precedent recognizing that capital punishment is not invalid per se); *see also Bin Laden,* 126 F.Supp.2d at 294 (relying on *Gregg* court rejected argument that death penalty was cruel and unusual punishment in violation of the Eighth Amendment). O'Driscoll is charged with murder. In *Gregg* the Supreme Court held that the death penalty was an appropriate sanction for that offense. 428 U.S. at 176–87, 96 S.Ct. 2909.

O'Driscoll's citation to the dissenting opinion of Justice Blackmun in *Callins v. Collins,* 510 U.S. 1141, 114 S.Ct. 1127, 1128, 127 L.Ed.2d 435 (1994) and the dissenting opinion of Judge Lewis, joined by Judges Mansmann and McKee, in *Flamer v. Delaware,* 68 F.3d 736, 764–76 (3d Cir. 1995) provides no basis for this court to find that the federal death penalty is unconstitutional. Relying on controlling Supreme Court precedent, including *McCleskey* and *Gregg,* we will reject the challenge.[13]

H. O'Driscoll's motion entitled "Motion to Dismiss Aggravating Factors on the Basis that Facts in Aggravation of Punishment and Relevant Culpable Mental States, as Aspects of Capital Crimes, Must be Found by a Grand Jury and Alleged by Indictment." (Doc. 37)

 Because the government is seeking the death penalty the trial in this case

---

**13.** In the *Hammer* case we rejected the argument. *See* order of September 18, 1997 (Doc. 190).

will be a bifurcated proceeding. If the jury finds O'Driscoll guilty of the charge of first-degree murder, the jury then must determine whether he should receive the death penalty. This determination requires that the jury pass through several stages. Initially, the jury must determine whether O'Driscoll had the requisite "intent" or "gateway mental state" in committing the offense. 18 U.S.C. § 3591(a)(2) lists the four "intent" factors as follows:

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act,; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act[.][14]

In the government's notice of intent to seek the death penalty it alleges as the intent factor that O'Driscoll "intentionally killed the victim"

O'Driscoll requests that the government's notice of intent to seek the death penalty be dismissed because the intent and aggravating factors set forth in the

government's notice of its intent to seek the death penalty were not found by the grand jury and alleged in the indictment. O'Driscoll relies on the Fifth Amendment Grand Jury Clause and the cases of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

We will put aside for a brief moment the question of whether the indictment returned by the grand jury must allege the requisite "intent" and aggravating factors. The grand jury found probable cause to believe that O'Driscoll "willfully, deliberately, maliciously, unlawfully, and with premeditation and malice aforethought, did kill Robert M. Frankhouser by stabbing him." "Willful" is defined as "done deliberately: not accidental or without purpose: INTENTIONAL, SELF–DETERMINED[.]" Webster's Third International Dictionary. Because the grand jury found probable cause to believe that O'Driscoll intentionally killed the victim, O'Driscoll's argument with respect to the "intent" factor is devoid of merit.

On June 26, 2000, the United States Supreme Court issued its opinion in *Apprendi*. The holding of that case is as follows:

Other than the fact of prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.

530 U.S. at 490, 120 S.Ct. 2348 (emphasis added.) The Supreme Court in issuing it decision in *Apprendi* relied on the *Jones*

---

**14.** Several courts have referred to these "intent" factors as "gateway mental states." *See, e.g., Bin Laden*, 126 F.Supp.2d at 296. In the *Hammer* case we observed that the requirement that the jury during the penalty phase find an "intent" factor gave the defendant "a second bite at the apple." *United States v. Hammer*, 25 F.Supp.2d 518, 520 n. 2

(M.D.Pa.1998). The "intent" factor in the *Hammer* case was encompassed within the court's finding that David Paul Hammer was guilty of first-degree murder. In the present case if the jury finds O'Driscoll guilty of first-degree murder it will have had to have found that he "intentionally killed the victim."

case. Both cases dealt with facts which increased the penalty for a crime beyond the statutory maximum otherwise applicable.

 Several courts subsequent to the *Apprendi* and *Jones* decisions have concluded that the intent and aggravating factors need not be alleged in the indictment. *See United States v. Allen,* 247 F.3d 741, 761–64 (8th Cir.2001); *Llera Plaza,* at 462; *Bin Laden,* 126 F.Supp.2d at 296; *United States v. Kee,* 2000 WL 863119, at *10 n. 9 (S.D.N.Y. June 27, 2000)(Cote, J.). In *United States v. Allen* the Court of Appeals for the Eighth Circuit in rejecting the exact claim that O'Driscoll raises stated as follows:

> We need only examine whether the Fifth Amendment's indictment requirements have been met.
>
> We begin by determining whether the mental culpability factors and statutory aggravating factors are elements of the underlying offense, because as already noted, every element of an offense must be charged in an indictment to satisfy the Fifth Amendment. The structure of the two statutes indicates that neither factor is an element of the offense of conviction. . . .
>
> The next question, then, is whether [under *Apprendi* ] the mental culpability factors and statutory aggravating factors are deemed elements of the crime by virtue of being facts which are the basis for increasing the maximum punishment. We think that when read in the context of the Supreme Court's decisions interpreting the Eighth Amendment in death cases over the past two decades, these two features of the [Federal Death Penalty Act] are properly characterized as sentencing protections that shield a defendant from automatically receiving the statutorily authorized death sentence. In each case, death is

the first punishment authorized by each statute. . . .

> Allen argues that [the intent and aggravating factors] should be viewed as elements that increase the maximum penalty by assuming that a life sentence is the initial baseline from which the jury's sentencing determinations under the [Federal Death Penalty Act] are viewed. We reject this interpretation because the statutes at issue expressly authorize a maximum penalty of death and the sentencing factors of mental culpability and aggravating circumstances do not increase the sentencing range but rather provide the particularized standards for choosing which of the alternative available sentences should be imposed. . . .
>
> Because of the unique context of this scheme, and because the statutes of conviction authorize a penalty of death, we hold that failure to allege the mental culpability and statutory aggravating factors in a capital defendant's original indictment does not violate the Fifth Amendment's Indictment Clause.

247 F.3d at 762–764 (citations and parentheticals omitted). In issuing the *Apprendi* decision the Supreme Court was well aware of the capital sentencing scheme set forth in the Federal Death Penalty Act and in numerous similar state capital sentencing statutes. The Supreme Court in commenting on those state statutes noted that "this Court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death." 530 U.S. at 496, 120 S.Ct. 2348.

In the present case O'Driscoll faces a maximum penalty of death. We agree

with the courts that have decided subsequent to *Apprendi* and *Jones* that the intent and aggravating factors are not elements of the offense of first-degree murder such that those factors need to be alleged in an indictment.

I. O'Driscoll's motion entitled "Motion to Bar the Government from Presenting Evidence, at a Penalty–Phase, of Unadjudicated Criminal Conduct and to Strike such Conduct from the Notice of Aggravating Factors." (Doc. 38)

O'Driscoll requests that we strike all allegations of unadjudicated criminal conduct and other acts of serious violence from the government's notice of intent to seek the death penalty. The government in its notice sets forth as a non-statutory aggravating factor O'Driscoll's "[p]articipation in additional charged and uncharged murders, attempted murders, or other serious acts of violence." Specifically, in the notice the government alleges as follows:

At the time of his conviction for kidnapping in Colorado in 1984, the defendant had more than 60 cases pending against him in various courts across the country. The charges against him ranged from assault with a dangerous weapon, to assault on a Federal Officer, to murder. Those serious acts of violence include, but are not limited to, the following:

a) In June 1982, the defendant broke into the home of a 78–year–old man, began to strangle him, severely beat him, bound him with tape, pistol whipped him and attempted to suffocate him;

b) Following the armed bank robbery for which defendant was convicted in Massachusetts in 1983, he accosted a 67–year old woman, punched her in the face and drove her to a motel in New York where he bound her and left her, telling her that she would be killed if she went to the police;

c) Following the armed bank robbery for which the defendant was convicted in Colorado in 1984, he went into a pawn shop, brutally beat the owner and left him for dead.

Some courts have concluded that evidence of unadjudicated offenses should not be admitted during a capital sentencing proceeding. *See, e.g., Commonwealth v. McCoy,* 405 Pa. 23, 172 A.2d 795, 799 (1961)(such evidence may confuse the jury and deprive an accused of an orderly trial); *State v. McCormick,* 272 Ind. 272, 397 N.E.2d 276, 281 (1979)(expressing the concern that a jury which had already convicted defendant of murder would be tainted in passing on the likelihood of his having committed other like offenses). The Court of Appeals for this circuit has not decided whether such evidence is admissible. However, the Court of Appeals for the Fifth Circuit has concluded that such evidence is not per se inadmissible. *United States v. Hall,* 152 F.3d 381, 404 (5th Cir.1998). Similarly, a judge of this district has stated that there is "no binding or even persuasive authority that the court should per se exclude evidence of [unadjudicated offenses]." *Bradley,* 880 F.Supp. at 287 In *Bradley* the court concluded that "the best solution in the absence of case law to the contrary" was "to permit the introduction of the evidence upon a showing of reliability." *Id.* However, no hearing was conducted in *Bradley* to determine the reliability of the evidence because the case was "deauthorized" for capital prosecution by the Department of Justice.

We will require the government at a hearing prior to the commencement of trial to establish the reliability of the evidence of unadjudicated offenses and serious acts of violence. Furthermore, the

government will be directed to file an amended notice of intent to seek the death penalty specifying in detail each and every instance of unadjudicated conduct and serious violence which it intends to present during the penalty phase as a non-statutory aggravating factor.

In assessing whether the evidence is reliable we will consider using the post-judgment motion for acquittal standard, *i.e.*, viewing the evidence in the light most favorable to the government could a reasonable jury find guilt beyond a reasonable doubt. *See Davis*, 912 F.Supp. at 949. Furthermore, the evidence must be otherwise competent and reliable and the unrelated crimes or misconduct must have relevance and probative value as to O'Driscoll's character and propensities. *Id.*

An appropriate order will be entered.

### ORDER

1. O'Driscoll's motion entitled "Motion to Strike Non–Statutory Aggravating Factor No. 3 or in the Alternative for Discovery with respect to Non–Statutory Aggravating Factor No. 3" (Doc. 28) is denied.

2. Within 60 days from the date of this order government counsel shall provide O'Driscoll and the Court with a written statement describing the proposed testimony of each victim impact witness it intends to call during the penalty phase of the trial.

3. If O'Driscoll is found guilty of first-degree murder, trial counsel shall submit to the court at the start of the penalty phase proposed instructions to be given the victim impact witnesses prior to their testimony.

4. O'Driscoll's motion entitled "Motion to Dismiss Notice of Aggravating Factors, and/or for Discovery and a Hearing, Since Mr. O'Driscoll has been Unfairly, Arbi-

trarily, and Capriciously Targeted for Capital Punishment" (Doc. 29) is denied.

5. O'Driscoll's motion entitled "Motion for Discovery and a Hearing and to Dismiss the Notice of Aggravating Factors on the Grounds that the Federal Death Penalty is Sought on the Impermissible Basis of Race and Arbitrary Basis of Region" (Doc. 36) is denied.

6. O'Driscoll's motion entitled "Motion to Dismiss Non–Statutory Aggravating Factors on the Basis that Congress did not Enact 'Proportionality Review' as Part of the Federal Death Penalty Act of 1994" (Doc. 30) is denied.

7. O'Driscoll's motion entitled "Motion to Dismiss Certain of the Statutory and Non–Statutory Aggravating Factors as Vague or Duplicative" (Doc. 31) is denied.

8. O'Driscoll's motion entitled "Motion to Strike Non–Statutory Aggravating Factors as Violative of the Delegation Doctrine Embodied in the Constitution of the United States" (Doc. 33) is denied.

9. O'Driscoll's motion entitled "Motion for Bill of Particulars Regarding Aggravating Factors" (Doc. 34) is denied.

10. O'Driscoll's motion entitled "Motion to Declare the Death Penalty Unconstitutional As Cruel and Unusual Punishment in All Cases" (Doc. 35) is denied.

11. O'Driscoll's motion entitled "Motion to Dismiss Aggravating Factors on the Basis that Facts in Aggravation of Punishment and Relevant Culpable Mental States, as Aspects of Capital Crimes, Must be Found by a Grand Jury and Alleged by Indictment" (Doc. 37) is denied.

12. O'Driscoll's motion entitled "Motion to Bar the Government from Presenting Evidence, at a Penalty–Phase, of Unadjudicated Criminal Conduct and to Strike such Conduct from the Notice of Aggravating Factors" (Doc. 38) is denied.

13. Within thirty (30) days of the date of this order the government shall file an amended notice of intent to seek the death penalty specifying in detail each and every instance of unadjudicated conduct and serious violence which it intends to present during the penalty phase as a non-statutory aggravating factor. Failure to file an amended notice will result in the court striking from the government's notice the unadjudicated offenses and serious acts of violence set forth in paragraph 1 on pages 3 and 4 of the government's notice of intent to seek the death penalty.

14. This case is placed on the April, 2002, trial list for a hearing to determine whether the evidence of unadjudicated offenses and serious acts of violence is of such reliability that it should be presented during the penalty phase of the trial.